**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**SAVANNAH DIVISION**

| | |
|---|---|
| JESSICA CASTO,<br><br>Plaintiff,<br><br>v.<br><br>STOP N STOR, INC.; and STEFANIE DASHER MCCULLOUGH,<br><br>Defendants. | CIVIL ACTION NO.: 4:26-cv-00010 |

**ORDER**

Plaintiff Jessica Casto[1] sued Defendants Stop N Stor, Inc. ("Stop N Stor"), her former employer, and its president, Stefanie Dasher McCullough, alleging violations of the overtime and retaliation provisions of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"). (Doc. 1.) Plaintiff alleges that (1) Stop N Stor failed to pay her time and a half for the hours she worked in excess of 40 hours per week and (2) Defendants retaliated against her for complaining about the unpaid overtime wages by immediately terminating her employment. (Id.) Before the Court is Defendant's Motion to Compel Arbitration and Dismiss the Action, (doc. 7), and Plaintiff's Notice of Objection to the Supplemental Declaration of McCollough, (doc. 18). For the reasons below, the Court **GRANTS** Defendants' Motion to Compel Arbitration, (doc. 7), **DENIES** Defendants' Motion to Dismiss the Action, (id.), and **OVERRULES** Plaintiff's Objection, (doc. 18).

[1] During her employment with Defendants, Plaintiff also referred to herself as and went by the name "Leigh Hart" or "Leigh Casto." (Doc. 7, p. 1 n.1.)

## BACKGROUND

According to the Complaint, Defendant Stop N Stor operates a storage unit business with locations throughout Georgia and South Carolina. (Doc. 1, p. 2.) McCullough was an owner and executive of Stop N Stor. (Id. at p. 3.) As such, McCullough was involved in the day-to-day operations of Stop N Stor, exercised operational control of Stop N Stor, and exercised direct control over the terms of Plaintiff's employment. (Id. at p. 3.) Plaintiff worked for Stop N Stor as a marketing manager from August 4, 2025, through November 25, 2025. (Id. at p. 2.) Plaintiff's primary duties, all assigned by McCullough, included creating and posting social media content, responding to online reviews, updating digital platforms, monitoring Yelp leads, inputting data into spending reports, and supporting office operations. (Id. at p. 2–3.)

Throughout Plaintiff's employment, Defendants compensated Plaintiff on a salary basis, irrespective of the number of hours she worked. (Id. at p. 5.) Plaintiff claims she regularly worked over 70 hours per workweek. (Id. at p. 4.) Plaintiff alleges that Defendants failed to compensate her at time and half of her regular hourly rate for each hour she worked in excess of 40 hours per workweek, as required by the FLSA. (Id. at p. 5.) In November 2025, Plaintiff complained to McCullough that Plaintiff should not be treated as an overtime-exempt employee based on her job duties and requested that Defendants begin paying her overtime premiums for her overtime hours worked. (Id.) Plaintiff claims that within hours of this complaint, Defendants locked her out of her email and work systems and informed her that they were ending her employment. (Id.) Plaintiff alleges that Defendants terminated her because of her protected complaint in violation of the FLSA's anti-discrimination provision, 29 U.S.C. § 215(a)(3). (Id.)

Stop N Stor engages a third-party professional employer organization, Paychex Business Solutions, LLC ("Paychex"), to manage its payroll and benefits for employees. (Doc. 7, p. 2.) As

such, during Stop N Stor's onboarding process, new employees must complete certain documentation provided and managed by Paychex. (Id.) Defendants note that one of the forms that new employees must review and sign is the Paychex "New Employee Packet," which includes a "Dispute Resolution Agreement" (the "Arbitration Agreement"). (Id.)

Defendants claim that Plaintiff agreed to arbitrate this dispute when she reviewed and signed the Paychex "New Employee Packet," which included the Arbitration Agreement. (Doc. 7, pp. 2–3.) As evidence that Plaintiff agreed to the Arbitration Agreement, Defendants attach to their Motion the Declaration of McCullough and "a true and authentic copy" of the Arbitration Agreement that Plaintiff signed. (Docs. 7-1 & 7-2.) The Arbitration Agreement states, in relevant part:

> Section 2. Dispute Resolution Agreement – Important, Please Read
> . . .
>
> You, Paychex, and the Worksite Employer agree:
>
> This Agreement governs legal disputes between you and any Paychex-affiliated company . . . or the business or organization you perform work for (your "Worksite Employer," which is an intended beneficiary of this Agreement) arising out of or in connection with your employment, application for employment, or separation from employment for which you are, were, or would be paid through Paychex.
>
> **MANDATORY ARBITRATION**
>
> *What is arbitration?* . . . The US Supreme Court has held that employees may be required to arbitrate disputes under the Federal Arbitration Act, the law of which applies to this Agreement.
>
> *What disputes will be decided by arbitration?* To the greatest extent allowed by law, except as otherwise provided below, **ANY DISPUTE BETWEEN YOU AND PAYCHEX OR YOUR WORKSITE EMPLOYER WILL BE RESOLVED EXCLUSIVELY THROUGH BINDING ARBITRATION.**
>
> . . .

> *How will arbitration work?* To the extent not inconsistent with this Agreement, the rules of the neutral arbitration service for individual . . . employment disputes will apply. The arbitrator will: Have the authority to determine whether a dispute is subject to this agreement to arbitrate (unless applicable law provides that a court make that determination)[.]
>
> . . .
>
> *Are there any other people covered by this Agreement?* If a legal dispute involves owners, directors, officers, managers, employees, benefit plan administrators, or insurers of Paychex or your Worksite Employer, or anyone alleged to be joint employers with Paychex or your Worksite Employer (all of which are intended beneficiaries of this Agreement), that dispute also will be governed by this Agreement including its arbitration, jury trial waiver, and class/representative/collective action waiver provisions.

(Doc. 7-2, pp. 2–4.)

In her Declaration, McCullough, who identifies herself as the president of Stop N Stor, states that the facts set forth in her declaration "are based on either [her] personal knowledge or based on the records maintained by [Stop N Stor] in the ordinary course of its business." (Doc. 7-1, p. 2.) McCullough states that as president, she is "familiar with the application and onboarding process for new employees and the scope of [Stop N Stor's] business," and that she "[has] access to application documents and onboarding documents maintained by [Stop N Stor]." (Id. at p. 3.) McCullough states that new Stop N Stor employees must review and sign the Paychex "New Employee Packet," which includes a "Dispute Resolution Agreement." (Id.) According to McCullough, after a new employee reviews the Dispute Resolution Agreement, they must affirmatively sign the document and "acknowledge and agree to the terms of this New Employee Packet, including section 2. Dispute Resolution Agreement." (Id. (quoting doc. 7-2, p. 4).) McCullough claims that as part of Plaintiff's onboarding process, Plaintiff reviewed and signed several documents, including the Arbitration Agreement. (Id.)

Likewise, to support certain factual claims of her own, Plaintiff attached her own Declaration to her Response in Opposition to Defendants' Motion. (Doc. 15-1.) In her Declaration, Plaintiff testifies that she saved all of the onboarding paperwork Defendants presented to her during her onboarding, and the Arbitration Agreement is not among the paperwork. (Id. at pp. 1–2.) Plaintiff testifies that she has "no recollection" of signing the Arbitration Agreement during her onboarding, and if Stop N Stor had presented it to her, she would have kept a physical copy or taken a photo of it. (Id. at p. 2.) Plaintiff acknowledges that she interacted with a Paychex representative on the phone while she set up her Paychex account, although she does not recall ever signing anything from Paychex electronically or on paper. (Id.) Plaintiff adds that she does not recall ever being presented with the Arbitration Agreement or discussing it with the Paychex representative. (Id.) Finally, Plaintiff asserts that the signature on the Arbitration Agreement does not appear to be her own, which she notes is represented in the Employment Eligibility Verification Form attached to her Declaration as an exhibit. (Id. at pp. 2, 5.)

In support of Defendants' Reply to Plaintiff's Response, Defendants attach, among other documents, a Supplemental Declaration of McCullough. (Doc. 17-1.) In the Supplemental Declaration, McCullough provides additional evidence to rebut Plaintiff's assertions that she did not review or sign the Arbitration Agreement. (Id.; see also docs. 17-2, 17-3, 17-4, 17-5 & 17-6.) Plaintiff filed a Notice of Objection to the Supplemental Declaration of McCullough. (Doc. 18.) Defendants filed a Response to Plaintiff's Notice. (Doc. 22.)

## DISCUSSION

### I. Plaintiff's Notice of Objection to Defendants' Supplemental Declaration of McCullough

Plaintiff requests that the Court exclude the Supplemental Declaration of McCullough that Defendants attached to their Reply to Plaintiff's Response in Opposition to Defendants' Motion.

(Doc. 18.) Plaintiff first claims that Defendants failed to present evidence in their Motion showing that Plaintiff and non-party Paychex entered into an enforceable contract, and that Defendants therefore cannot seek to enforce an arbitration provision as a third-party beneficiary. (Id. at pp. 1–2.) Plaintiff then argues that Defendants "tacitly acknowledge their failure by attempting to cure the deficiencies in their [M]otion after the fact by filing a 'Supplemental Declaration' with exhibits." (Id. at p. 2.) Plaintiff contends that, "where, as here, a motion fails on its face due to an insufficient factual showing, such deficiency cannot be cured by new evidence presented in support of a reply brief." (Id. at p. 2.) Defendants, on the other hand, argue that the Supplemental Declaration of McCullough is appropriate rebuttal evidence, and thus the Court should consider it in deciding Defendants' Motion and overrule Plaintiff's Notice of Objection. (Doc. 22.)

"While 'new evidence is not properly considered if offered for the first time in support of a reply brief, evidence can be offered to rebut a point raised in an opposition brief.'" Parker v. Alcon Mgmt. S.A., No. 21-14068, 2022 WL 3905872, at *3 (11th Cir. Aug. 31, 2022) (alterations adopted) (quoting Thompson v. Alabama, 428 F. Supp. 3d 1296, 1307 (M.D. Ala. 2019)). However, "[i]f the declarations filed with the Motion to Dismiss were insufficient, the Defendants may not later file reply declarations as a supplement or substitute." Schwindler v. Bryson, No. 1:11-CV-1276-TCB, 2016 WL 6821140, at *3 (N.D. Ga. Oct. 26, 2016) (quoting Exceptional Mktg. Grp., Inc. v. Jones, 749 F. Supp. 2d 1352, 1360 (N.D. Ga. 2010)); see also id. ("[The Northern District of Georgia] has repeatedly refused to consider affidavits filed with reply briefs that were 'offered and intended to replace inadequate evidentiary submissions offered in support of . . . motions' rather than respond to new issues raised in the other party's response brief." (quoting Tishcon Corp. v. Soundview Commc'ns, Inc., No. 1:04-CV-524-JEC, 2005 WL 6038743, at *8–9 (N.D. Ga. Feb. 15, 2005))); Carlisle v. Nat'l Com. Servs., Inc., No. 1:14-CV-515-TWT,

2015 WL 4092817 (N.D. Ga. July 7, 2015), aff'd, 722 F. App'x 864 (11th Cir. 2018) (refusing to consider defendant's affidavit, filed with reply brief, that "provides support for factual assertions raised in [defendant's] opening brief . . . for which [defendant] failed to provide evidentiary support when it filed its initial brief").

Defendants claim that in the Supplemental Declaration, McCullough "does not provide new arguments in support of Defendants' motion to compel arbitration, but rather further addresses the authenticity of the Arbitration Agreement in direct response to Plaintiff's claims that she does not recall signing the document and did not believe the signature on the document was her signature." (Id. at p. 3.) Defendants argue that "the statements in McCullough's Supplemental Declaration were submitted 'in response to [Plaintiff's] challenge to the authenticity of' the Arbitration Agreement." (Id. at p. 4 (quoting Lightsey v. Potter, 268 F. App'x 849, 852 (11th Cir. 2008)).) In her Supplemental Declaration, McCullough provides information as to Paychex's online portal for new employees, the documents new employees must review and sign in the portal, and how new employees sign documents through the portal. (Doc. 17-1, p. 2.) Specific to Plaintiff, McCullough provides information regarding Plaintiff's Paychex account and onboarding process and attaches as exhibits documents depicting Plaintiff's signature as well as "signature reports" for each onboarding document Plaintiff signed in the Paychex portal, including "Employment disclosures," which McCullough asserts includes the Arbitration Agreement. (Id. at p. 3; see docs. 17-2, 17-3, 17-4, 17-5 & 17-6.)

Because Defendants' Supplemental Declaration of McCullough provides evidence to rebut Plaintiff's Response challenging the authenticity of the Arbitration Agreement, rather than to merely supplement or substitute their initial evidentiary submissions in support of their Motion, the Court **OVERRULES** Plaintiff's Objection to Defendants' Supplemental Declaration of

McCullough. (Doc. 18.) See Lightsey, 268 F. App'x at 852 (district court properly considered declaration attached to defendant's reply brief that was submitted in response to plaintiff's challenge to the authenticity of certain evidence attached to defendant's motion for summary judgment).

**II. Defendants' Motion to Compel Arbitration**

The Federal Arbitration Act ("FAA") creates a liberal policy favoring arbitration, and states that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011) (citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)). Sections 3 and 4 of the FAA accordingly allow parties to an arbitration agreement to move for an order "directing that such arbitration proceed in the manner provided for in such agreement," and staying proceedings in federal court pending outcome of the arbitration. 9 U.S.C. §§ 3–4. Accordingly, "the [FAA] requires courts rigorously to enforce arbitration agreements according to their terms, including terms that specify with whom the parties choose to arbitrate their disputes and the rules under which that arbitration will be conducted." Epic Sys. Corp. v. Lewis, 584 U.S. 497, 506 (2018) (internal quotations and emphasis omitted).

Courts assessing motions to compel arbitration undertake a multi-step inquiry. First, they must ensure that an arbitration agreement was formed. Attix v. Carrington Mortg. Servs., LLC, 35 F.4th 1284, 1294 (11th Cir. 2022) (citing 9 U.S.C. § 4). Second, they must confirm that the agreement "applies to the dispute at hand." Id. (citing 9 U.S.C. § 4). And third, courts must "determine whether . . . there are any 'grounds as exist at law or in equity for the revocation of any contract' that 'invalidate' the arbitration agreement or 'permit it to be declared unenforceable.'" Id. (alterations adopted) (quoting Concepcion, 563 U.S. at 339); see also 9 U.S.C. § 2. If an

agreement survives each of these inquiries, then the court "shall" compel arbitration and stay proceedings. Id. (quoting 9 U.S.C. §§ 3–4).

Under this three-part standard, Defendants first argue that an arbitration agreement was formed when Plaintiff reviewed and signed the Paychex "New Employee Packet," which included the Arbitration Agreement, as part of her onboarding process. (Doc. 7, p. 2.) Second, according to Defendants, the Arbitration Agreement applies to this dispute because it "governs legal disputes . . . arising out of or in connection with [Plaintiff's] employment," and "[t]his dispute clearly arises 'out of or in connection with [Plaintiff's] employment." (Id. at pp. 3, 13–17; doc. 7-2, p. 2.) Third, Defendants assert that no external law makes the agreement invalid or unenforceable, meaning the Court should compel arbitration. (Doc. 7, pp. 8–10.)

In response, Plaintiff only addresses the first step of the inquiry. (Doc. 15.) Plaintiff argues that Defendants have not provided sufficient evidence to show the parties formed an arbitration agreement. (Id. at pp. 6–15.) For the reasons detailed below, the Court rejects Plaintiff's argument and finds that all the requirements to compel arbitration are satisfied. Defendants have provided sufficient evidence that Plaintiff signed the Arbitration Agreement and thereby formed an agreement to arbitrate. The terms of the Agreement include a delegation provision that requires an arbitrator, not the Court, to determine the Agreement's scope and enforceability. Accordingly, the Court must compel arbitration and refer to an arbitrator any arguments on the Arbitration Agreement's scope and enforceability.

### A. There is Sufficient Evidence that the Parties Formed an Arbitration Agreement.

As to the first prong of the motion-to-compel standard, Plaintiff argues that Defendants have failed to show competent evidence that Plaintiff entered into a valid contractual agreement to arbitrate her claims. (Doc. 15, pp. 6–15.) A court can only compel parties to arbitrate their

dispute if the parties made a clear agreement to do so. Larsen v. Citibank FSB, 871 F.3d 1295, 1302 (11th Cir. 2017) (citing Klay v. All Defs., 389 F.3d 1191, 1200 (11th Cir. 2004)). Accordingly, before it can grant a motion to compel, a court must "satisfy itself that such agreement exists" by resolving any issues on the formation of a given arbitration clause. Id. at 1302–03 (quoting Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 297 (2010)). The Eleventh Circuit Court of Appeals has instructed district courts that, in making this determination, they must employ a "summary judgment-like standard." Bazemore v. Jefferson Cap. Sys., LLC, 827 F.3d 1325, 1333 (11th Cir. 2016) ("[A] district court may conclude as a matter of law that parties did or did not enter into an arbitration agreement only if 'there is no genuine dispute as to any material fact' concerning the formation of such an agreement." (quoting Fed. R. Civ. P. 56(a))). Further, to assess whether the parties properly formed an agreement to arbitrate, courts generally "apply ordinary state-law principles that govern the formation of contracts." Id. at 1329 (quoting First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995)). The Court will apply Georgia law.[2]

Georgia law mandates that "the party asserting the existence of a contract has the burden of proving its existence and its terms." Torres v. Elkin, 730 S.E.2d 518, 523 (Ga. Ct. App. 2012) (citing Millwood v. Art Factory, Inc., 702 S.E.2d 7, 9 (Ga. Ct. App. 2010)). That party must show these elements: "parties able to contract, a consideration moving to the contract, the assent of the parties to the terms of the contract, and a subject matter upon which the contract can operate."

[2] The Arbitration Agreement does not contain a choice-of-law provision for claims litigated outside of an arbitral forum. (Doc. 7-2.) In their briefing, both parties rely on Georgia law. (See doc. 7, pp. 8–10; doc. 15, pp. 6–15.) The Court will accordingly apply Georgia law to determine whether the parties formed an agreement to arbitrate. See Bazemore, 827 F.3d at 1330 ("[P]laintiff asserts, and defendant appears to agree, that Georgia law applies . . . . Accordingly, we apply Georgia law to determine whether [the parties] entered into an arbitration agreement.").

Turner Broad. Sys., Inc. v. McDavid, 693 S.E.2d 873, 877 (Ga. Ct. App. 2010) (quoting O.C.G.A. § 13-3-1).

Defendants purport to have satisfied this burden by showing that Plaintiff signed the Arbitration Agreement and acknowledged that the Agreement was "valid and binding." (Doc. 7, p. 8.) Plaintiff, on the other hand, maintains that Defendants have failed to prove the existence of a valid arbitration agreement. (Doc. 15, pp. 6–15.) Plaintiff asserts that Defendants have not provided sufficient evidence to show the assent of the parties and fail to establish evidence of valid consideration. (Id.) For the reasons below, the Court rejects Plaintiff's arguments and finds that Defendants have satisfied their burden of proving that an arbitration agreement exists.

**(1) Defendants have Produced Sufficient Evidence that the Parties Assented to the Arbitration Agreement.**

Plaintiff claims that Defendants have not proven the "assent" element required to form a contract under Georgia law. See Bazemore, 827 F.3d at 1330–33 (addressing "the issue of the existence of an agreement to arbitrate" as a question of "assent" under Georgia law). The element of assent requires "(a) a meeting of the minds (b) on the essential terms of the contract." Id. at 1325 (quoting Regan v. Stored Value Cards, Inc., 85 F. Supp. 3d 1357, 1362 (N.D. Ga. 2015)); see also O.C.G.A. § 13-3-1. Though parties often show assent by simply producing a signed agreement, assent can be proven with evidence of any type. See Sidhom v. Boutros, 855 S.E.2d 426, 428 (Ga. Ct. App. 2021) ("[T]he circumstances surrounding the making of the contract . . . are relevant in deciding if there was a mutual assent to an agreement, and courts are free to consider such extrinsic evidence." (quoting Hart v. Hart, 777 S.E.2d 431, 433 (Ga. 2015))); see also Glasscock v. Activision Blizzard, Inc., No. 2:24-cv-4036, at *11 (W.D. Mo. Feb. 13, 2025) (order granting in part motion to compel) ("[A] party may offer any relevant, admissible evidence,

including circumstantial, to establish the existence of an agreement." (citing Gannon Int'l, Ltd. v. Blocker, 684 F.3d 785, 792 (8th Cir. 2012))).

To show assent, Defendants provide a "true and authentic copy" of the Arbitration Agreement depicting Plaintiff's signature as well as the Declaration of McCullough, who testifies that Plaintiff reviewed and signed the Arbitration Agreement during her onboarding process. (Doc. 7-1 (citing doc. 7-2).) Defendants also provide the Supplemental Declaration of McCullough, which addresses Plaintiff's argument regarding the authenticity of the Arbitration Agreement. (Doc. 17-1 (citing docs. 17-2, 17-3, 17-4, 17-5 & 17-6).) These Declarations assert Plaintiff entered into the Arbitration Agreement during her new employee onboarding process. (Docs. 7-1 & 17-1.)

Plaintiff, in response, denies signing the Arbitration Agreement and maintains that Defendants "provided none of the relevant information that would allow the Court to conclude that an enforceable contract was formed." Specifically, she states in her Response that McCullough's testimony fails to show the existence of an agreement between Paychex and Plaintiff, with or without Defendant as the beneficiary. (Doc. 15, pp. 10–15; see also doc. 15-1, p. 2.) Plaintiff relies on the California Superior Court case, Becerra v. Veer Hosp. Palm Springs LLC, No. 2024-01372931-CU-OE-CXC, 2024 Cal. Super. LEXIS 39198 (Sup. Ct. Cal., Orange Cnty. Jan. 31, 2024), that addresses enforcement of the same Paychex-affiliated Dispute Resolution Agreement at issue here. (Doc. 15, p. 14.) The California Superior Court determined that defendant had not carried its burden of proving the existence of a valid arbitration agreement because the agreement did not identify the defendant or the "Worksite Employer," and the agreement did not contain a signature line for any party other than the plaintiff. Becerra, 2024 Cal. Super. LEXIS 39198, at *3–5. Plaintiff argues that the "facts of Becerra are on all fours with the facts presented here."

(Doc. 15, p. 14.) However, as Defendants note, (doc. 17, pp. 4–5), the defendants in Becerra only attached the arbitration agreement and a declaration from their attorney asserting that the agreement was a business record; the declaration was not made by an employee or executive with personal knowledge, as Defendants' Declarations here are. 2024 Cal. Super. LEXIS 39198, at *3. McCullough attests that she has personal knowledge of both the onboarding process generally and Plaintiff's onboarding process, and she testifies that the Arbitration Agreement is a business record that Plaintiff signed. (Docs. 7-1 & 17-1.) Moreover, "traditional principles of state law may allow a contract to be enforced by . . . nonparties to the contract through . . . third-party beneficiary theories." Lawson v. Life of the S. Ins. Co., 648 F.3d 1166, 1170 (11th Cir. 2011) (internal quotations omitted).

However, Plaintiff also challenges McCullough's Declarations, arguing that "McCullough does not establish that she has any personal knowledge about the authenticity of the document. Accordingly, the agreement is not excepted from the rule against hearsay and must be disregarded as inadmissible hearsay," and for the same reason, "it can't be authenticated under Fed. R. Evid. 901(b)(1) because McCullough doesn't have the requisite personal knowledge under Fed. R. Evid. 602." (Doc. 15, pp. 13–14.) In Lamonaco v. Experian Information Solutions, Inc., the Eleventh Circuit enforced an arbitration agreement where the defendant submitted a declaration "based on personal knowledge, describ[ing] the enrollment process, and append[ing] the operative contract[.]" 141 F.4th 1343, 1348 (11th Cir. 2025). Plaintiff acknowledges that a "declaration that sets forth specific facts based on personal knowledge, describes the enrollment process, and appends the operative contract is competent evidence sufficient to satisfy [the] initial burden" of a party seeking to enforce an arbitration agreement. (Doc. 15, p. 13 (quoting Lamonaco, 141 F.4th

at 1348).) But Plaintiff argues that McCullough's Declarations set out none of this information. (Id.)

Through her Declarations, McCullough has established that her testimony is based on personal knowledge as president of Stop N Stor, describes the onboarding process for new employees and Plaintiff in particular—including the documents new employees are required to sign, and provides attachments of both the signed Arbitration Agreement and the signature log that was generated after Plaintiff signed her onboarding documents. (Docs. 7-1, 7-2, 17-1, 17-2 & 17-3.) Accordingly, Defendants have satisfied their initial burden. Even when viewing the facts in the light most favorable to Plaintiff, McCullough's declarations and supporting exhibits make it "more likely than not" that Plaintiff agreed to the Arbitration Agreement. Lamonaco, 141 F.4th at 1348.

Further, as Defendants argue, Plaintiff's "conclusory and vague rebuttal evidence" that she does not recall signing the document does not create a genuine issue of material fact. (Doc. 17, p. 2.) Indeed, an arbitration agreement may be enforceable even though the plaintiff denies signing the agreement. See Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1376 (11th Cir. 2005) (holding that a signature is not required to make an arbitration agreement enforceable); Draughan v. Allied Universal Sec. Servs. Universal Prot. Serv., LP, No. 1:23-CV-2933-LMM-CCB, 2024 WL 5700348, at *4 (N.D. Ga. July 2, 2024), report and recommendation adopted, 2024 WL 5699906 (N.D. Ga. July 22, 2024) (compelling arbitration where plaintiff's unequivocal denial that he signed arbitration agreement was not sufficient to create genuine issue of fact); Garcia v. Harmony Healthcare, LLC, No. 8:20-CV-1065-WFJ-AAS, 2021 WL 1610093, at *4 (M.D. Fla. Apr. 26, 2021) (finding that electronic signatures were valid because employer provided an affidavit from another employee who understood and explained onboarding process as well as the

signature log generated after plaintiff signed onboarding documents). Defendants have thus provided sufficient evidence that the parties assented to the Arbitration Agreement.

**(2) Defendants have Produced Sufficient Evidence of Consideration.**

As explained above, to satisfy their burden, Defendants must also prove the other required elements of contract formation: "parties able to contract, a consideration moving to the contract, . . . and a subject matter upon which the contract can operate." O.C.G.A. § 13-3-1. Defendants argue that the evidence "clearly demonstrates that there was ample consideration to support the Arbitration Agreement" because (1) consideration is valid where Plaintiff accepts and continues employment, and (2) mutual promises and obligations support consideration and validity. (Doc. 7, pp. 8–10; doc. 17, pp. 3, 7–12.) See Shubert v. Scope Prod., Inc., No. 2:10-CV-00101-RWS, 2011 WL 3204677, at *2 (N.D. Ga. July 27, 2011) (holding that defendants' continued employment of at-will plaintiff constituted bargained-for performance in exchange for plaintiff's assent); Caley, 428 F.3d at 1376 ("Georgia law provides that mutual promises and obligations are sufficient consideration to support a contract."); Anderson v. AIG Life & Ret., 199 F. Supp. 3d 1371, 1378 (S.D. Ga. 2016) ("Not only did AIG provide Plaintiff a job as consideration for his assent to the EDR plan, but AIG itself agreed to be bound by the same plan."). Plaintiff argues that Defendants fail to "even recite consideration of any sort," and the Arbitration Agreement "has no recitation or other evidence of valid consideration." (Doc. 15, pp. 1, 8, 10–11.) Yet, Plaintiff fails to support her conclusory statements that the Arbitration Agreement lacks consideration with evidence sufficient to create a genuine issue of material fact. (See generally doc. 15.) Through her employment and compensation, Plaintiff received consideration for her assent to arbitration. Having received the benefit of that bargain, she cannot claim a lack of consideration.

**B. Plaintiff has Failed to Dispute Defendants' Arguments as to the Second and Third Prongs.**

Having found that the parties formed an arbitration agreement, the Court turns to the second and third prongs of the motion-to-compel standard, which require that the agreement "applies to the dispute at hand," and that no grounds make it unenforceable. Attix, 35 F.4th at 1294; see also 9 U.S.C. §§ 1–4; Concepcion, 563 U.S. at 339; Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 69 (2010). Defendants' arguments in support of these prongs are patently correct. Plaintiff apparently concedes these issues, as she does not argue that the Arbitration Agreement does not apply to the dispute at hand or that grounds make it unenforceable. (See doc. 15.)

Accordingly, Defendants have satisfied all the requirements to compel arbitration and the Court **GRANTS** Defendants' Motion to Compel Arbitration. (Doc. 7.)

**III. Defendants' Motion to Dismiss this Action**

The Supreme Court recently held that the FAA always requires courts to stay, rather than dismiss, the proceedings if one of the parties requests a stay. Smith v. Spizzirri, 601 U.S. 472, 478 (2024); 9 U.S.C. § 3 (providing that courts "shall" upon request stay the proceeding until the arbitration "has been had in accordance with the terms of the [arbitration] agreement"). The Court thus **DENIES** Defendants' Motion to the extent it seeks dismissal. (Doc. 7.)

## CONCLUSION

For the stated reasons, the Court **GRANTS in part** and **DENIES in part** Defendants Stop N Stor and Stefanie Dasher McCullough's Motion to Compel Arbitration and Dismiss the Action. (Doc. 7.) The Court **GRANTS** Defendants' Motion to Compel Arbitration and **DENIES** Defendants' Motion to Dismiss the Action. (Id.) The Court **OVERRULES** Plaintiff's Objection to Defendants' Supplemental Declaration of McCullough. (Doc. 18.) The Court **ORDERS** the parties to submit the underlying dispute to arbitration in accordance with the Arbitration

Agreement. In addition, the Court **DIRECTS** the Clerk of Court to **STAY** and **ADMINISTRATIVELY CLOSE** this case. The parties are **DIRECTED** to file a joint report on the status of the arbitration proceeding **NINETY (90) DAYS** from the date of this Order, every **NINETY (90) DAYS** thereafter, and within **TEN (10) DAYS** of the completion of arbitration proceedings.

**SO ORDERED**, this 30th day of September, 2026.

R. STAN BAKER, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA